UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PETER A. KRAEGER,

                Plaintiff,

    v.                                     Case No. 24-CV-883

WAUPACA COUNTY,
TIMOTHY R. WILZ, CARL ARTZ, and
JULIE THOBABEN,

                Defendants.

## DECISION AND ORDER

This matter is before the court on Waupaca County, Timothy R. Wilz, Carl Artz, and Julie Thobaben's motion to dismiss Peter A. Kraeger's first amended complaint (ECF No. 21), filed November 18, 2024, pursuant to Rule 12(b)(6), Fed. R. Civ. P.

1. **INTRODUCTION**

Kraeger's first amended complaint alleges that the defendants violated his First Amendment right to freedom of speech. Kraeger served as a law enforcement officer with the Waupaca County Sheriff's Department from 2015 until his resignation in April of 2023. He held the rank of detective sergeant at the time of his resignation.

1

The complaint explains that detective sergeants regularly review the reports made by deputies if an arrest was going to be referred to the Waupaca County District Attorney's Office for prosecution. For example, detective sergeants checked reports for grammar before the reports were sent to prosecutors. However, per department policy, only the original author could make substantive changes to a report.

In 2020, Kraeger reviewed a deputy's report that suggested the deputy had unlawfully searched a vehicle. The report and vehicle related to Peter Klotzbuecher's arrest. Concerned that the search was unlawful, Kraeger brought the issue to the attention of his supervisor, Detective Captain Thobaben. Thobaben stated that the problematic language should be deleted. Kraeger later saw the report that was sent to the district attorney's office and the language that suggested that the search was unlawful had been removed. According to Kraeger, Thobaben unilaterally took out the language, thus violating a sheriff's department policy.

Kraeger brought the changing of the report to the attention of Chief Deputy Carl Artz on September 1, 2020. Artz explained it was common practice for supervisors to make substantive edits to the reports. That same day, Detective Sergeants McClone and Durrant, acting in-part on Kraeger's behalf and concerned about the integrity of ongoing criminal prosecutions, informed District Attorney Isherwood that reports were being altered. The next day Detective Captain Thobaben met with Kraeger and placed him on suspension for having gone outside the chain of command by speaking with Chief Deputy Artz about the altered report. Kraeger alleges that this marked the start of a harassment campaign by Sheriff Timothy Wilz,

Chief Deputy Artz, and Detective Captain Thobaben, all of whom were Kraeger's superiors, in retaliation for his role in disclosing issues with the reports. Their campaign included Kraeger's paid suspension in January of 2022, which Kraeger claims was an attempt to intimidate him from testifying truthfully at an upcoming hearing relating in Klotzbuecher criminal case.

Kraeger resigned from the Sheriff's Department on April 11, 2023. He filed the instant action in July of 2024, alleging that the defendants violated his First Amendment rights by retaliating against him for (1) disclosing the altered report to Chief Artz; (2) his role in notifying the District Attorney of the altered reports; and (3) his testimony in the Klotzbuecher case.

In his first amended complaint, Kraeger presents a narrative that he contends adds up to a claim for relief for First Amendment retaliation. Although Kraeger does not formally delineate counts, he identifies three separate instances of expression that "he was unlawfully retaliated against for." (ECF No. 20, ¶ 501.) The defendants structure their motion to dismiss around these three instances, treating each instance as a distinct claim. For clarity, the court follows this same structure and recognizes three distinct claims of First Amendment retaliation: (1) retaliation for Kraeger's September 1, 2020, disclosure to Chief Deputy Carl Artz ("Claim I"); (2) retaliation for the disclosure to the District Attorney by other deputies acting partly on Kraeger's behalf ("Claim II"); and (3) retaliation for Kraeger's February 2022 testimony in the Klotzbuecher case ("Claim III"). Neither in his first amended complaint nor in his response to the defendants' motion to dismiss is there any hint that Kraeger intends

3

to allege any other sort of claim other than three instances of retaliation in violation of the First Amendment.

The defendants move to dismiss the complaint on the basis that (1) Kraeger's speech in Claims I and II was not protected speech because the speech was made in his capacity as a public employee, not as a private citizen, (2) Kraeger cannot sustain Claim III for anticipatory retaliation because there was no sufficient threat identified, and (3) defendants Wilz, Artz, and Thobaben enjoy qualified immunity, which forecloses suit against them in their personal capacity on all three claims.

## 2. JURISDICTION

The court has jurisdiction under 28 U.S.C. § 1331. Kraeger alleges the defendants violated the First Amendment of the United States Constitution by retaliating against him for engaging in allegedly protected speech. *See* 42 U.S.C. § 1983.

## 3. LEGAL STANDARD

### 3.1. Legal Standard for Motions to Dismiss.

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Courts also "draw all reasonable inferences from these facts in favor of the plaintiff." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)

While a plaintiff is not required to plead detailed factual allegations, there must be more than labels and conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that a complaint must provide sufficient facts to raise a right to relief above the speculative level, and mere labels or formulaic recitations are insufficient under Rule 12(b)(6)). Nevertheless, a complaint "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002)).

**3.2. Free Speech Violations Under Section 1983.**

Section 1983 provides a cause of action for "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A First Amendment retaliation claim requires that the plaintiff (1) engaged in protected speech, (2) suffered a harm that that would deter future activity protected by the First Amendment, and (3) the First Amendment activity was a motivating factor in the defendant's decision to retaliate. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (quotations omitted).

5

Case 1:24-cv-00883-BBC    Filed 03/21/25    Page 5 of 14    Document 26

## 4. DISCUSSION

### 4.1. Claim I: retaliation for Kraeger's September 1, 2020, disclosure to Chief Deputy Carl Artz.

The defendants argue Claim I should be dismissed because the disclosure to Artz was speech made pursuant to Kraeger's official duties, not the protected speech of a private citizen.

For over sixty years the United States Supreme Court has recognized that citizens do not surrender their First Amendment protections by virtue of accepting public employment. *Lane v. Franks*, 573 U.S. 228, 231 (2014) (citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)). In addition to the preservation of the right to speech of the individual, there is a clear public interest in public employees maintaining their ability to speak, as they are in the best position to alert the community of government misconduct. *Id.* at 236. Simultaneously, the public has an interest in the effective management of government and monitoring of public workplaces. *Id.* Government offices could not function if every employment decision became a constitutional matter. *Connick v. Myers*, 461 U.S. 138, 143 (1983). Consequently, actions commenced by government employees against their employers for violation of the First Amendment require a special inquiry that seeks a balance between the individual rights of the employees as citizens and the interests of the public in effective government. *Lane*, 573 U.S. at 231.

"For a public employee to prove retaliation in violation of the First Amendment, he must first establish that his speech was constitutionally protected."

*Lett v. City of Chicago*, 946 F.3d 398, 400 (7th Cir. 2020) (citing *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013)). A public employee's speech is protected if (1) he spoke as a private citizen rather than in his capacity as a public employee; (2) he spoke on a matter of public concern; and (3) his interest in expressing the speech is not outweighed by the state's interests as an employer in promoting effective public service. *Id.* The defendants' motion to dismiss targets the first element.

The speech of public employees is not protected when it is made pursuant to their official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Yet, speech is not rendered official simply because it regards information learned in the course of official employment. *Lane*, 573 U.S. at 239. Clarifying *Garcetti*, the United States Supreme Court in *Lane* explained that the determination of whether the expression is pursuant to one's official duties depends on whether the "speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 240. Therefore, speech that is part of an employee's expected duties is not protected. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).

Adhering to *Garcetti* and *Lane,* the court must conclude that Kraeger's disclosure of misconduct to Artz was not protected speech. Reporting misconduct to a superior is an ordinary part of any public employee's job and not protected speech. *See Kubiak v. City of Chicago*, 810 F.3d 476, 481–82 (7th Cir. 2016) ("Generally, an employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor."); *Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007)

7

(finding that an officer's report of misconduct to a superior was not protected speech, but was consistent with her duties as a correctional officer).

Kraeger's disclosure of the potential misconduct of his supervisor to Artz falls squarely within his expected duties. Reporting a perceived violation of department policy regarding report alterations to a superior like Artz was not an act of a private citizen airing a public concern, but rather an internal communication within the chain of command consistent with his job responsibilities. Even if Kraeger's intent was to expose misconduct, the forum he chose—his immediate supervisory structure—and the nature of his position render this speech unprotected under *Garcetti* and its progeny. Because Kraeger fails to allege facts showing he spoke as a private citizen, Claim I does not state a plausible First Amendment retaliation claim. Accordingly, Claim I will be dismissed.

### 4.2. Claim II: retaliation for the disclosure to the District Attorney of the issues with the reports.

The first amended complaint provides limited detail about the nature of the communication with the District Attorney, the duties and professional responsibilities of Kraeger and his colleagues who spoke to the District Attorney, the extent of Kraeger's involvement, and the causal link between the communication and any adverse action. (ECF No. 20.)

Kraeger alleges that he, McClone, and Durrant discussed their concerns that the altered reports would impact the integrity of ongoing prosecutions. (ECF No. 20, ¶ 434.) McClone and Durrant, acting for themselves and Kraeger, brought the information about the alterations to District Attorney Veronica Isherwood. (ECF No.

8

Case 1:24-cv-00883-BBC    Filed 03/21/25    Page 8 of 14    Document 26

20, ¶ 436.) Kraeger claims the defendants retaliated against him for this disclosure. (ECF No. 20, ¶ 501.)

Whether a law enforcement officer's communications to a prosecutor about suspected misconduct by his colleagues are protected or private speech may depend on the specific facts and circumstances such as the affirmative duties of the officer, the relationship with the district attorney, and the normal practices and procedures. *See Morales v. Jones*, 494 F.3d 590, 597-98 (7th Cir. 2007) (reversing jury verdict and holding that plaintiffs' disclosure to a prosecutor of suspected misconduct by police department officials was not protected speech). At the motion to dismiss stage, the court has only the allegations in the complaint. Those allegations suggest that it is plausible Kraeger may be able to prove that this incident constituted protected speech. Consequently, dismissal is inappropriate.

Defendants Wilz, Artz, and Thobaben also argue that the court must dismiss Claim II because they are entitled to qualified immunity.

"Qualified immunity is a defense protecting government officials from both liability and suit." *Roldan v. Stroud*, 52 F.4th 335, 338 (7th Cir. 2022). The protection affords government employees the "breathing room" to operate efficiently, without constant legal concerns. *Lane*, 573 U.S. at 243 (quotations omitted).

A government official is entitled to qualified immunity unless (1) the official violated a constitutional right and (2) the right was clearly established at the time of the challenged conduct. *Id.* A constitutional right is clearly established when existing precedent places the question beyond debate. *Kemp v. Liebel*, 877 F.3d 346 (7th Cir.

9

2017). "[Courts] look first to controlling Supreme Court precedent and [their] own circuit decisions on the issue." *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). Where no controlling precedent exists, "[courts] broaden [their] survey to include all relevant caselaw in order to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (quotations omitted). "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019). The United States Supreme Court "has repeatedly told courts … not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citing *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)).

Granting qualified immunity at the pleadings stage is a delicate matter. On the one hand, qualified immunity "protect[s] defendants from the burden of suit," indicating the question of qualified immunity "should be resolved as promptly as possible." *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). Yet, "dismissing a § 1983 suit at [the motion to dismiss] stage on qualified immunity grounds is a delicate matter because the federal rules do not require a plaintiff to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint." *Brown v. City of Chicago*, 594 F.Supp.3d 1021, 1039 (N.D. Ill. Mar. 23, 2022) (internal quotation marks and citations omitted).

Qualified immunity likewise often depends on the specific facts of the case, which must be developed as the case progresses. At this stage, the court can say only

10

that the allegations in the amended complaint fail to show that defendants Wilz, Artz, and Thobaben are entitled to qualified immunity. *See Reed v. Palmer*, 906 F.3d 540, 549–551 (7th Cir. 2018) (explaining that "the district court acted prematurely in deciding [the defendant]'s entitlement to qualified immunity at the motion to dismiss stage" because "the present [factual] record [renders it] impossible to determine whether such a constitutional violation occurred in plaintiffs' cases.").

The defendants' argument for dismissal of Claim II raises issues both factual and legal questions. "The court declines to resolve these legal and factual questions on the instant motion to dismiss. Such disputes are better addressed on summary judgment after the parties have had the benefit of engaging in discovery and the court has the benefit of a more complete record." *Appvion, Inc. v. Richards*, No. 18-C-1861, 2025 WL 346736, at *5 (E.D. Wis. Jan. 30, 2025) Accepting Kraeger's allegations as true, Kraeger's Claim II states a plausible claim for First Amendment retaliation. Accordingly, the defendant's motion to dismiss Claim II will be denied.

### 4.3. Claim III: retaliation for Kraeger's February 2022 testimony in the Klotzbuecher case.

The defendants seek dismissal of Claim III on two grounds: first, that the factual allegations are facially insufficient to state a claim; and second, that defendants Wilz, Artz, and Thobaben are entitled to qualified immunity in their individual capacities.

3.5.1 <u>Claim III: the sufficiency of Kraeger's allegation.</u>

The defendants argue that because Kraeger was suspended before his testimony, that suspension cannot satisfy the requirement of a threat of future

11

punishment to state a claim under a prior restraint theory. (ECF No. 22 at 12–13.) The defendants argue that absent a threat of future, additional punishment, Kraeger has failed to state a plausible prior restraint claim. (ECF No. 22 at XX (citing *Lindell v. Kind*, No. 19-C-702, 2021 WL 6137381 (E.D. Wis. Dec. 29, 2021)).)

The First Amendment protects citizens from conduct that is designed to have a chilling effect on speech. *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). Prior restraint—threatening a penalty if a person engages in speech—is the quintessential First Amendment violation. *Id.*

Kraeger specifically alleges that he was suspended as an attempt to intimidate him from testifying truthfully in the Klotzbuecher case. (ECF No. 20, ¶ 483.) A reasonable person in Kraeger's position could plausibly interpret the suspension with pay as a warning shot—an implicit threat of future punishment to come if he did not testify in a manner that appeased his supervisors—particularly given its proximity to his scheduled testimony. The absence of an express threat of future harm does not doom his claim.

Similarly, the defendants' argument that the suspension was an insufficient threat to violate Kraeger's First Amendment rights is unavailing. The defendants assert that Kraeger cannot show that the suspension would deter a person of ordinary firmness because, in fact, Kraeger testified despite the suspension. (ECF No. 22, at 13.) This contention misconstrues the applicable legal standard. The relevant inquiry is not whether Kraeger himself was deterred, but whether the suspension—an adverse action timed closely to his scheduled testimony—would likely chill a person

12

of ordinary firmness from engaging in protected speech, such as testifying truthfully. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (holding that the "ordinary firmness" test is an objective one, focusing on the effect of the defendant's conduct on a typical person, not the plaintiff's subjective response). The fact that Kraeger still testified is not dispositive and the factual question remains of the sufficiency of the threat and its impact on an ordinary person. Accordingly, Kraeger has sufficiently stated a claim for free speech retaliation in Claim III.

### 3.5.2 Claim III: Wilz, Artz, and Thobaben's qualified immunity.

Defendants Wilz, Artz, and Thobaben also move to dismiss Claim III in relation as to their individual capacities, because they are entitled to qualified immunity.

The defendants present no specific argument attacking Claim III on qualified immunity grounds. They merely recite their general assertion of entitlement to qualified immunity. *See* United States v. Berkowitz, 927 F.2d 1376, 1386 (7th Cir. 1991) (stating it is "clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). Again, whether the individual defendants are entitled to qualified immunity in relation to Claim III depends on the specific facts.

Defendants Wilz, Artz, and Thobaben having failed to show that they are entitled to qualified immunity, dismissal on that basis is inappropriate at this stage. Accordingly, the defendants' motion to dismiss Claim III will be denied.

## 5. CONCLUSION

**IT IS ORDERED** that the defendants' motion to dismiss Kraeger's first amended complaint (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Claim I. The motion to dismiss is **DENIED** as to Claims II and III.

Dated at Green Bay, Wisconsin this 21st day of March, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge
